LOLLEY, J.
 

 | defendants, Robert Thornton and Bill Schwyhart, appeal the decision of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, which denied the defendants’ exception of personal jurisdiction and granted a motion for summary judgment in favor of the plaintiff, Iberia-Bank. For the following reasons, we affirm.
 

 FACTS
 

 IberiaBank brought this action against Thornton and Schwyhart (“defendants” or “guarantors”), as guarantors of various loans made by IberiaBank (“Iberia”) to the borrower, Pinnacle Air., L.L.C. (“Pinnacle Air”). Iberia is a Louisiana Bank, organized in Louisiana, and with its headquar
 
 *722
 
 ters in Louisiana. Pinnacle Air is an Arkansas company, and the defendants are Arkansas residents.
 

 The defendants were the owners of Pinnacle Air, which provided charter aircraft services throughout the country.
 
 [1]
 
 Over a period of 3½ years, Iberia made several loans to Pinnacle Air and its affiliates, with the principal amount on the loans exceeding $15 million. The defendants were guarantors on all of the loans made to Pinnacle Air. The purpose of the loans was to acquire jet aircrafts for .the company. Pinnacle Air eventually defaulted on the loans and Iberia filed the instant suit against the guarantors to compel payment and seek to recover the remaining sum of the notes and interest. The defendants excepted to personal jurisdiction, and the trial court denied the exception and granted summary judgment in favor of Iberia on its claims under the guaranties. The defendants now appeal.
 

 ^DISCUSSION
 

 Personal Jurisdiction
 

 Appellate courts conduct a
 
 de novo
 
 review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court.
 
 Engineering Dynamics, Inc. v. Massachusetts Institute of Technology,
 
 2005-295 (La.App. 5th Cir.11/29/05), 917 So.2d 1168. The Louisiana long-arm statute, La. R.S. 13:3201, provides for the exercise of personal jurisdiction over a nonresident defendant and in pertinent part, states:
 

 A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
 

 ll) Transacting any business in this state.
 

 (2) Contracting to supply services or things in this state.
 

 (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
 

 (4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
 

 (5) Having an interest in, using or possessing a real right on immovable property in this state.
 

 * * *
 

 B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
 

 |sThe due process test first enunciated in
 
 International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement,
 
 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and embodied in La. R.S. 13:3201, has evolved into a two-part test. The first part is the “minimum contacts” prong, which is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.”
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The nonresident’s “purposeful availment” must be such that the defendant “should reasonably anticipate being haled into
 
 *723
 
 court” in the forum state.
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This “purposeful availment” requirement ensures that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person.
 
 Asahi Metal Industry Co., Ltd. v. Superior Court of California,
 
 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
 

 In cases involving contracts, the exercise of jurisdiction requires an evaluation of the following factors surrounding the contract and its formation: (1) prior negotiations between the parties; (2) contemplated future consequences of the contract; (8) the terms of the contract; and (4) the parties’ actual course of dealing.
 
 See Burger King, supra.
 
 An individual’s contract with an out-of-state party alone cannot establish minimum contacts in the home forum.
 
 Id.
 

 |4In the instant case, the primary issue is whether the defendants had sufficient minimum contacts with Louisiana such that the maintenance of this suit does not offend the traditional notions of fair play and substantial justice. We must evaluate the quality and nature of the defendants’ activities surrounding the guaranties that Iberia now seeks to enforce. Defendants argue that the only factor in support of exercising jurisdiction is the choice of law provision electing Louisiana law, which is insufficient to satisfy minimum contact requirements. While this is true, “the choice of law provision coupled with other facts in this case can [be sufficient to] do so.”
 
 A & L Energy, Inc. v. Pegasus Group,
 
 2000-3255 (La.06/29/01), 791 So.2d 1266,
 
 cert. denied,
 
 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001). The record reflects the language that was set forth in each of the guaranties, signed by the defendants, included a choice of law provision-specifically that Louisiana law applied. The contract also stated that the guaranty would be accepted by the lender in Louisiana.
 

 Defendants make much of the fact that neither set foot in Louisiana.
 
 [2]
 
 We note that jurisdiction may not be avoided merely because the defendants did not physically enter the forum state.
 
 Bordelon, Hamlin, Theriot & Hardy v. Burlington Broadcasting, Ltd.,
 
 1994-1839 (La.App. 4th Cir.03/16/95), 652 So.2d 1082. A review of the record makes clear that all of the loan documents, including the guaranties, identified the Iberia office in Monroe, Louisiana, and it was also the location where the payments on the | r,notes were made. The record also includes a request by the defendants for modifications of various promissory notes that were directed to the Iberia branch in New Iberia, Louisiana.
 

 Defendants are sophisticated investors who are in the practice of dealing with commercial transactions and, in this case, several loans were acquired worth more than $15 million. Schwyhart was also the manager of Pinnacle Air and played an active role in its everyday affairs. Schwy-hart, in his deposition, admitted to having signed not only the guaranties but also the checks to pay the loan on behalf of Pinnacle Air. It is disingenuous to act as if the two different positions Schwyhart held were mutually exclusive in establishing the minimum contacts with the forum state. In addition, while Thornton may have
 
 *724
 
 played a more passive role, he still remained a sophisticated investor who, like Schwyhart, signed a series of guaranties over several years that identified the Monroe, Louisiana office as the location of Iberia. He was also involved in the management of Pinnacle Air. There is nothing in the record that suggests that, although an octogenarian, Thornton was not a sound, business-minded person.
 

 Defendants do not dispute that they are guarantors for the loans that were borrowed from Iberia Bank. As guarantors they are secondarily liable for the amount owed to the bank. The function of a guarantor is to step into the shoes of the borrower in the event of a default.
 
 See
 
 La. C.C. art. 3035. In
 
 American Bank and Trust Co. v. Sunbelt Environmental Systems, Inc.,
 
 451 So.2d 1111, 1117 (La.App. 1st Cir.1984), the court specifically stated that the guarantors on a note payable to a Louisiana bank “should treasonably have anticipated being haled into a Louisiana court in the event of an alleged default in payment.”
 
 See also Koeniger v. Lentz,
 
 450 So.2d 680 (La.App. 4th Cir.1984). In other words, Louisiana has a strong interest in protecting its corporate citizens who have sustained an injury.
 

 In
 
 First Nat. Bank of Lewisville v. Jones,
 
 35,708 (La.App.2d Cir.02/27/02), 811 So.2d 217, an Arkansas bank made a loan to borrowers, and requiring some security acquired two faxes signed by purported guarantors, both who were Louisiana residents. After the borrowers defaulted, the bank obtained default judgments in Arkansas against the guarantors and filed a petition in a Louisiana court seeking recognition and execution of the Arkansas judgment. This court affirmed the decli-natory exception of lack of personal jurisdiction and stated that “the sole contacts between [the guarantors] and the Bank were two faxes that came into the Bank’s possession by undisclosed means. Neither was signed in Arkansas or bound the defendants as sureties. An agreement of suretyship must contain an absolute expression of intent to be bound.” In contrast, in the instant case, we have an unequivocal agreement by the guarantors to be bound, and the continuing correspondence between Iberia, a Louisiana bank, and the defendants over the years is not as attenuated as two unidentified faxes.
 

 In light of our findings, we find that there are sufficient minimum contacts with the forum state to establish personal jurisdiction over the defendants. The defendants fail to convince this court that the assertion of jurisdiction is unfair.
 

 |
 
 -¡Motion for Summary Judgment
 

 As an appellate court, we review summary judgment
 
 de novo
 
 under the same criteria that govern the district court’s considerations regarding the appropriateness of summary judgment.
 
 Koeppen v. Raz,
 
 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue.
 
 Id.
 

 Defendants raise an affirmative defense of alleged actions of “self-help” by the bank with regard to borrower’s collateral, specifically the jet planes. However, the record is void of any evidence to create a factual issue. An affidavit merely stating that “Iberia took possession of the collateral” and “without permission” does not make it so. As such, we need not determine the whereabouts of the collateral or whether a genuine issue of material fact exists. Furthermore, as Iberia accurately points out, the agreement signed by the defendants specifically allows for the bank to dispose of the collateral in any manner,
 
 *725
 
 without releasing the guarantors from their obligations or liabilities under the guaranties. Iberia has submitted an accounting of the amount owed which has not been rebutted and is entitled to a summary judgment.
 

 CONCLUSION
 

 For the foregoing reasons, the trial court’s judgment is affirmed in all respects. Costs are assessed against defendants, Robert Thornton and Bill Schwy-hart.
 

 AFFIRMED.
 

 [1]
 

 . Another owner was J.B. Hunt who is deceased.
 

 [2]
 

 . Robert M. Head, an executive vice-president with Iberia, did travel to Arkansas to meet with the parties to further all transactions; however, we find this to be more in line with customer service and akin to "house calls” rather than advertising. At the time of these transactions, Head’s office, and his secretary, were located in Monroe, Louisiana.