DREW, J.
12Greenway Leasing, L.P. (Greenway),[1] and Joy Greenway Groves, plaintiffs, appeal the judgment sustaining Star Buffet, Inc.’s (SBI) Declinatory Exception of Lack of Personal Jurisdiction and dismissing their claims against SBI without prejudice. Plaintiffs also contend that the trial court erred in denying their motion for a continuance. The trial court denied as moot dilatory exceptions of vagueness and nonconformity with La. C.C.P. art. 891.
As to the issue of the court’s personal jurisdiction over SBI, the judgment is reversed and this matter is remanded for further proceedings. This partial reversal of the trial judgment essentially renders moot plaintiffs’ complaint about the continuance.
FACTUAL AND PROCEDURAL BACKGROUND
| ¡¿Plaintiffs own the restaurant building at 4630 East Texas Street in Bossier City. Greenway owns the restaurant building at 9176 Mansfield Road in Shreveport. Greenway and Groves leased the Bossier City premises to Barnhill’s Buffet, Inc. (Barnhill), a Tennessee corporation, for March 15, 2003, through September 14, 2010. Greenway leased the Shreveport building to Barnhill for the same time period.
Subsequently, Barnhill filed bankruptcy and on January 8, 2008, the U.S. Bankruptcy Court for the Middle District of Tennessee entered an order authorizing assumption of a number of Barnhill leases including those in Shreveport and Bossier City by Star Buffet Management, Inc. (SBMI), which was ordered to perform all the lessee’s obligations under the Barnhill leases including making payments and any repair and maintenance obligations.
Thereafter, Robert Wheaton, president of both SBMI (a wholly-owned subsidiary of SBI) and SBI, repeatedly attempted to *399 obtain a lower rent obligation from the plaintiffs. Additionally, Wheaton conducted discussions with Ken Greenway and plaintiffs’ attorney concerning their different interpretations about equipment ownership and maintenance obligations. SBMI stopped paying rent on February 1, 2009, but continued to occupy and operate the restaurants until January 2010.
|4On March 31, 2009, plaintiffs sued SBMI and SBI alleging that the two Star Buffet entities were liable, in solido, for the rent due under the entire lease and other monetary obligations along with damages for failure to maintain the rental properties. Urging that SBI and SBMI operated as a single business entity making it solidarily liable, plaintiffs, alternatively, sought to pierce the SBMI corporate veil so as to make SBI liable for the obligations of SBMI. Subsequently, plaintiffs amended their petition to detail specific maintenance and equipment issues.
On June 8, 2009, SBI filed a Declinatory Exception of Lack of Personal Jurisdiction and sought dismissal of plaintiffs’ claims. SBI asserted it had no contacts with the State of Louisiana and SBI’s parent/subsidiary relationship with SBMI did not create personal jurisdiction. Plaintiffs opposed the exception by arguing that SBI transacted business in Louisiana to the extent that the 26th Judicial District Court had jurisdiction. Following the October 8, 2009, hearing, the trial coupt issued reasons for judgment on October 15, 2009, and signed on November 12, 2009, the judgment which sustained SBI’s exception to the court’s jurisdiction and dismissed SBI without prejudice from the litigation. This appeal followed.
On appeal, plaintiffs’ primary complaint is that the trial court erred in finding that there was insufficient evidence to subject SBI to the jurisdiction |ñof the Louisiana court. The refusal of the trial court to continue the matter was an additional complaint by the plaintiffs.
LAW
La. R.S. 13:3201(A)(1) states:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
Comment (d) explains:
(d) “Transacting business”, as used in Subdivision (a), is a term which is-much broader than “doing business” as defined by earlier Louisiana cases, and the phrase “does .. business” of Subdivision (d) conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase “engaged in a business activity” of R.S. 13:3471(1). [13:3471(1) contains supplementary rules for service of process.]
In Frederic v. Zodiac Development, 2002-1178, pp. 4-7, (La.App. 1st Cir.2/14/03), 839 So.2d 448, 452-454, the First Circuit discussed at length the legal requirements for personal jurisdiction by a Louisiana court over a nonresident:
Appellate courts conduct a de novo review of the legal issue of personal jurisdiction over a nonresident by a Louisiana court. Spomer v. Aggressor Intern., Inc., 2000-1646, (La.App. 1st Cir.9/28/01), 807 So.2d 267, 271, writ denied, 2001-2886 (La.1/25/02), 807 So.2d 250. Under La. R.S. 13:3201, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Louisiana Con *400 stitution and the Constitution of the United States. Therefore, the limits of La. R.S. 13:3201 and the limits of constitutional due process are coextensive, and the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due process requirements. A&L Energy, Inc. v. Pegasus Group, 2000-3255, (La.6/29/01), 791 So.2d 1266, 1270.
In order to subject a nonresident defendant to a personal judgment, the due process test requires that the defendant must have certain minimum contacts with the forum state so that maintaining the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); de Reyes v. Marine Mgmt. and Consulting, 586 So.2d 103 (La.1991).
In Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court interpreted the due process clause and recognized a distinction between two types of personal jurisdiction— “general” and “specific.” A state exercises general jurisdiction when the defendant’s contacts with the state are not related to the lawsuit. Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant’s contacts with the forum. Spomer v. Aggressor Intern, Inc., supra at 271. The two-part minimum 17contacts/fairness analysis applies to the assertion of both specific and general jurisdiction, de Reyes, supra.
When a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant’s purposeful direction of its activities at a resident of that forum with litigation resulting from alleged injuries arising out of or related to those activities satisfies the requirement of meaningful minimum contacts, de Reyes, supra. When the cause of action, however, does not arise out of the defendant’s purposeful contacts with the forum, due process requires that the defendant be engaged in continuous and systematic contact to support the exercise of general jurisdiction. A&L Energy, Inc. v. Pegasus Group, supra. Contacts may be effected by mail and electronic communication, as well as physical presence. Spomer, supra.
The second phase of the analysis is a determination of the fairness of the assertion of jurisdiction. The defendant’s conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
Once the plaintiff proves the defendant has sufficient-minimum contacts to meet his burden of proof, a presumption of reasonableness of j ¿jurisdiction develops. Then the burden shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice that the presumption of reasonableness created by the defendant’s minimum contacts with the forum is overcome. Spomer, supra. In Asahi Metal Indust. Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court directed that the forum court examine the following to determine reasonableness of the jurisdiction: the defendant’s burden in litigating in the forum state, the forum state’s interest, the plaintiffs interest in convenient and effective relief, the judicial system’s interest in efficient resolution of controversies, and the state’s shared interest in furthering fundamental social policies.
*401 DISCUSSION

Personal Jurisdiction

Plaintiffs correctly claim that the district court has specific jurisdiction over SBI because this litigation arises out of and is related to SBI’s contacts with Louisiana. Noting that they do not rely upon the alter ego theory to obtain personal jurisdiction, plaintiffs cite SBI’s own contacts with Louisiana because SBI purposefully directed activities at residents of the forum and this litigation resulted from injuries related to those activities.
In Iberiabank v. Thornton, 45,332 (La.App.2d Cir.6/23/10), 44 So.3d 720, cited by plaintiffs, two guarantors of loans made by the bank were subject to the jurisdiction of the Louisiana courts even though they had not physically entered the state. Sufficient minimum contacts were present based upon the choice of Louisiana law in the loan documents along with other factors: the loan' documents, including the guaranties, identified the Iberia office in Monroe, Louisiana, as the location where the note payments were to be made. Further, defendants directed to the Iberia branch in New Iberia requests for modifications of various promissory notes. Id.
As to specific jurisdiction, SBI argued that plaintiffs failed to show that SBI had any contact with Louisiana which could have given rise to this lawsuit. SBI did not guarantee the SBMI obligations. SBI rejected any significance to the use of SBI letterhead in correspondence with plaintiffs and their attorney concerning the disputed issues. In the defense view, that correspondence did not give rise to this litigation and had as a sole purpose the extrajudicial resolution of the conflict.
SBI’s position is belied by documentation of its numerous activities directed toward the plaintiffs. The varied actions set out below constitute sufficient minimum contacts and meet plaintiffs’ burden' of proving SBI | mpurposefully transacted business with plaintiffs in this state. Moreover, this litigation arose from SBI’s activities.
■ Robert Wheaton, president of both SBMI (a wholly-owned subsidiary of SBI) and SBI (which has no employees), issued a press release on December 6, 2007, to Restaurant News Resource entitled “Star Buffet, Inc. Agrees to Acquire Buffet Restaurants.” The announcement stated that subject to approval by the bankruptcy court and certain creditors, SBI planned to acquire the restaurants and restructure operations. SBMI was not mentioned in .the notice.
■ After closing, Wheaton made five or six visits to Shreveport/Bossier to inspect the restaurants and meet Ken Greenway; Wheaton attempted to negotiate lower rents on the assumed leases and also to negotiate disputes with the plaintiffs concerning equipment ownership and maintenance obligations.
H Following a meeting between Whea-ton and Ken Greenway in Shreveport, Wheaton sent a letter dated 10/10/08 to Ken Greenway on SBI letterhead from fax machine identified as starbuffet-phx and signed by Wheaton as President and CEO. Therein, Wheaton reduced to writing three proposals he had presented to Greenway at their meeting. SBMI is not mentioned in the correspondence which suggested returning the businesses to plaintiffs and terminating the leases, continuing the leases approximately two years or until restructuring or modifying the leases with reduced rents and with lease obligations guaranteed by SBI.
*402 ■ In February 2009, SBMI stopped paying rent to plaintiffs because Wheaton stated that he decided SBMI’s limited capital would be more productive elsewhere. According to Wheaton, neither store had a positive cash flow without consideration of the rent to plaintiffs.
• ■ Dated 1/14/09 on SBI letterhead from fax machine identified as star-buffet-phx, Wheaton sent a letter to Ken Greenway proposing three alternatives to settle disputes over restaurant equipment ownership . which included reduced rent and for terminating the leases | nearly in exchange for SBI’s short term guaranty of rent. Wheaton signed as President and CEO, with no mention of SBMI in the letter;
H On 2/23/09, Wheaton responded to plaintiffs’ 2/16/09 notice of default with a letter to plaintiffs’ attorney. The transmittal was on SBI letterhead from fax machine identified as starbuffet-phx with a SBI fax cover sheet. Signing as President and CEO, Wheaton set out five possible courses of action, all of which contemplated the tenant terminating the leases early. Wheaton concluded the letter by observing that if plaintiffs rejected his proposals, the best plaintiffs could do would be to get a judgment against SBMI, which did not have the financial strength to pay any judgment;
H In a 3/10/09 letter to plaintiffs’ attorney, Wheaton sent a letter on SBI letterhead from a fax machine identified as starbuffet-phx with a SBI fax cover sheet and signed by Wheaton as President and CEO. Wheaton stated that SBMI had a limited amount of equity and significant debt. According to Wheaton, SBMI sustained operating losses and SBI was unwilling to contribute further capital so that SBMI was unable to meet its obligations including those owed the plaintiffs. Wheaton observed plaintiffs had refused to renegotiate leases as others had done in exchange for SBI guaranties. Renegotiation was still available to plaintiffs but with more limited range of alternatives; and
H Most significantly, among the obligations assumed by the tenant which acquired the lease rights to the plaintiffs’ properties in the Tennessee bankruptcy proceeding was the requirement to insure the properties. Liberty Mutual issued the “Certificate of Property Insurance” on both restaurants stating, “This is to certify that (Name and Address of the Insured);
Star Buffet, Inc.
1312 N. Scottsdale Road
Scottsdale, AZ 85257-3410[.]”
SBMI is not mentioned.
112Our de novo review of the record shows that SBI had sufficient minimum contacts with the State of Louisiana to subject SBI to the specific personal jurisdiction of this court. Moreover, SBI’s contacts arose out of SBI transactions in this state and pertained to this litigation. In addition to Wheaton’s numerous trips to Shreveport/Bossier to deal with matters related to these properties, the correspondence establishes SBI’s participation in the dispute. SBI’s participation in matters in this state directly related to the litigation is also established by SBI acquiring in its own name the insurance required by the leases. The quality and nature of SBI’s activities in Louisiana justify the state’s exercise of its judicial power over SBI.
With this finding of sufficient minimum contacts to subject SBI to the jurisdiction *403 of this court, the presumption of reasonableness of that jurisdiction attaches. Nothing in this record suggests that subjecting SBI to jurisdiction in Louisiana would be unreasonable in light of the traditional notions of fair play and justice. The restaurants and the disputed matters are located in Louisiana. SBI personnel made trips to this state in furtherance of that business and directed correspondence to the Louisiana plaintiffs and their attorneys concerning the disputed issues. SBI is represented by Louisiana attorneys. Louisiana is clearly the most convenient and practical |iaforum and SBI has made no showing of any burden in litigating in the 26th Judicial District Court.
This court’s findings are unrelated to the merits of the dispute which have yet to be litigated. The judgment of the trial court is reversed as to the issue of the personal jurisdiction of SBI and this matter is remanded for further proceedings.

Continuance

Although the hearing on the district court’s jurisdiction over SBI was held and the trial court ruling was made, the plaintiffs’ attorney reurged at the conclusion of the hearing that plaintiffs needed more time to seek clarification and supplementation of discovery information belatedly provided by the defendants only the evening before the hearing on jurisdiction. This was the subject of plaintiffs’ alternative motion for continuance. The result of this court’s judgment gives plaintiffs the opportunity to seek any additional defense discovery material prior to litigation on the merits of any liability which SBI may have in this dispute.
Plaintiffs in argument referred to what they determined to be contradictory and irreconcilable information provided by Wheaton in the Tennessee bankruptcy court and in his deposition contained in this record. |uThese complaints deal with the merits of the dispute and are not before this court.
DECREE
That portion of the judgment signed November 19, 2009, sustaining Star Buffet, Inc.’s Declinatory Exception of Lack of Personal Jurisdiction and dismissing without prejudice Star Buffet, Inc., from the litigation is reversed. In all other respects, the judgment is affirmed. This matter is remanded for further proceedings in accordance with this opinion. Costs are assessed against Star Buffet, Inc.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.

. Greenway Leasing, L.P., is owned by Ken Greenway. In the opinion, Greenway refers to the plaintiff business, and Ken Greenway is referred to by name.