WILLIAMS, C.J.
The defendants, Musa Slaughterhouse, LLC, Musa Simreen and Michael Habash, appeal a district court judgment denying their petition to nullify a default judgment that was rendered in favor of the plaintiff, J & J Livestock, LLC. For the following reasons, we affirm in part and reverse in part.
FACTS
This dispute arose as a result of an open account between the plaintiff, J & J Livestock, LLC ("J & J"), and the defendant, Musa Slaughterhouse, LLC ("Musa Slaughterhouse"). The defendant, Musa Simreen, is the owner of Musa Slaughterhouse; the defendant, Michael Habash ("Habash"), testified that he is the manager of the slaughterhouse. Musa Slaughterhouse is domiciled in Tampa, Florida; Musa Simreen is a resident of New York; Habash is a citizen of Canada. The plaintiff, J & J, is domiciled in Claiborne Parish, Louisiana.
In December 2014, J & J and Musa Slaughterhouse entered into an agreement to sell/buy livestock. As a result of business transactions between the entities, an open account was created. Generally, the parties' arrangement was as follows: Habash and James Garcia (the owner of J & J) would discuss orders and shipping arrangements via telephone conversations and/or text messages; once the order and shipping arrangements were determined, J & J would ship the orders to Musa Slaughterhouse's headquarters in Tampa, Florida. Normally, once Musa Slaughterhouse received the shipment from J & J, Habash would either mail a check to J & J, or would make a direct wire transfer to J & J's account. On the occasions when Musa Slaughterhouse's payment was insufficient to pay for the entire shipment, J & J would apply the payment to the outstanding balance on the open account. Between December 2014 and April 2015, 14 truckloads of livestock were transported from Claiborne Parish to Musa Slaughterhouse.
*1235 During that period, the defendants made approximately 22 payments to the plaintiff.
On April 28, 2015, Habash's nephew and at least two other men traveled to Louisiana to pick up the fourteenth shipment of livestock/fowl.[1] Garcia and Habash discussed the transaction over the telephone, and according to Garcia, Habash instructed him to "[j]ust let my nephew pick it all out." Habash's nephew selected certain livestock and fowl, and transported the load back to the Musa Slaughterhouse headquarters in Florida. At some point thereafter, Musa Slaughterhouse stopped making payments on the open account.
On June 24, 2015, J & J filed a "Petition on Open Account," naming Musa Slaughterhouse, Musa Simreen and Michael Habash as defendants. On June 29, 2015, the defendants were served with the petition via Louisiana's long-arm statute. The defendants did not file a response to the plaintiff's petition.
At the plaintiff's request, on August 3, 2015, the trial court entered a preliminary judgment of default against the defendants. On August 10, 2015, the plaintiff filed into the record the required affidavits of mailing of service of process to each of the defendants through the long-arm statute. The citations and petitions were mailed to each defendant at Musa Slaughterhouse's address in Tampa, Florida. The plaintiff attested that the process was sent by United States certified mail, in envelopes properly addressed to each defendant, with sufficient postage attached. The exhibits attached to the affidavits show that three certified mail notices were delivered to Musa Slaughterhouse's address on June 29, 2015. The return receipts were signed; however, the signatures were not legible.
Thereafter, on September 16, 2015, the district court entered a confirmation of the default judgment, finding that the defendants were liable, in solido , to the plaintiff for $76,306.11, plus legal interest from the date of judicial demand. The court also awarded to the plaintiff $2,500 in attorney fees and court costs. J & J made the judgment executory in Florida, resulting in the seizure of Musa Slaughterhouse's property.[2]
On April 4, 2018, the defendants filed a pleading entitled "Petition for Nullity and to Stay Execution of Judgment and Request for Expedited Consideration." The defendants argued that Louisiana lacked personal jurisdiction over them because Musa Slaughterhouse is a Florida company; Musa Simreen is a resident of New York; and Michael Habash is a resident of Canada. They also argued that service of process was improper because the "green cards" from the certified mail were signed by "an unknown person," rather than by Musa Simreen, who was Musa Slaughterhouse's agent for service of process.[3] According to the defendants, the person who signed the receipt of service cards for all three defendants was not authorized to do so.
A hearing was conducted on May 10, 2018, during which two witnesses testified, James Garcia and Michael Habash. Garcia testified that Habash learned of his livestock *1236 company from someone in Georgia and contacted him about purchasing livestock for Musa Slaughterhouse. Garcia testified as follows:
I did all my business with Michael Habash.
* * *
He would call me on the phone or send me text messages about what he needed and when he needed them.
* * *
And we provided freight for him, big truck loads, the first four or five loads, and then it'd be cut back to gooseneck loads, and then the last load, he sent his own people up here to pick up the load.
Garcia explained that when Habash called to place the first 13 orders, Habash specified "what type animal, what size animal." He stated that he shipped the livestock to Musa Slaughterhouse in Tampa, Florida. With regard to the fourteenth order/shipment from J & J to Musa Slaughterhouse, Garcia testified as follows:
We had been shipping big truck loads and then cut it to gooseneck loads, and then on load 14, he decided to send his own people up here. He thought he could do the freight cheaper. So, he sent his own truck and trailer up here with three or four men and one of them was his nephew, and they brought a trailer full of chicken crates because on that invoice * * * we shipped chickens, turkeys, ducks, goats, lambs, everything back on that fourteenth load[.] * * * And the nephew is the gentleman that pick[ed] out all the lambs. I had hundreds of lambs and goats there, and birds, and his nephew is the person that picked everything out and he had some help to help him load it, and so they loaded the animals and went back to Florida.
* * *
[A]nd I talked to Mike [Habash] several times while they were there loading the animals and - to find out if he wanted certain kinds. The order had changed a little bit, and he finally told me, "Just let my nephew pick it all out."
* * *
With regard to the payments he received from Musa Slaughterhouse, Garcia testified as follows: the first three or four orders for livestock were "very big loads," that averaged $60,000-$70,000 each, and Habash "paid them in full immediately"; Habash began "cutting back and not paying the loads in full"; Habash "had various stories he told, and then he just quit paying for them altogether"; Musa Slaughterhouse ordered approximately $500,000 in livestock over a five-month period; and he received 22 payments from Musa Slaughterhouse.
On cross-examination, Garcia testified that Habash never came to select or retrieve any livestock. He stated that he believed Habash's nephew was employed by Musa Slaughterhouse because when he (Garcia) went to Musa Slaughterhouse, he saw Habash's nephew behind the counter "reaching in the meat box to bring out meat."
Habash testified as follows: he is a citizen of Canada; he is not a dual citizen of the United States; he does not own a home or any immovable property in the state of Florida; Musa Simreen lives in New York and has never lived in Florida; prior to the court hearing in this matter, he has never been to the state of Louisiana; prior to the transactions at issue in this case, Musa Slaughterhouse had never purchased livestock from anyone in Louisiana; Musa Slaughterhouse is not registered in Louisiana, does not have an office in this state, does not have an agent for service of process in this state, and does not own any movable or immovable property in this state; he could not recall whether he contacted Garcia first regarding purchasing *1237 livestock; the plaintiff delivered the first 13 loads to Musa Slaughterhouse; the men who traveled to Louisiana to select and transport the last load of livestock were not employed by Musa Slaughterhouse; his nephew was not an employee of Musa Slaughterhouse "at that time"; his nephew was "17 or 18" years old at the time and "would hang around the slaughter plant just like a kid would"; his nephew just "went with the guys who picked up the load" and was not paid to do so; the men who picked up the load were paid a "flat fee" to transport the load; he does not recall the name of the driver he hired to transport the livestock; he found a driver to transport the livestock on one occasion because the plaintiff was unable to deliver it at that time; he was an employee, not an owner, of Musa Slaughterhouse; the slaughterhouse was owned by Musa Simreen; he was named a defendant in the lawsuit because he placed the orders and communicated with the plaintiff regarding the orders; none of the employees at Musa Slaughterhouse had the authority to accept service of process; he was not personally served with the lawsuit prior to the judgment of default; and he was not aware the lawsuit had been filed until he learned of the default judgment.
On cross-examination, Habash testified that he hired a driver to travel to Louisiana to transport the fourteenth load of livestock to Florida; his nephew traveled with the driver because "he wanted to go for a ride"; he does not know if anyone else accompanied his nephew and the driver; he and Garcia transacted business via telephone "a couple of times a week"; he does not recall whether the payments for the livestock were made by wire transfers or by check; and he and Musa Simreen were both authorized to sign checks on behalf of Musa Slaughterhouse.
At the conclusion of the hearing, the district court denied the petition to nullify the judgment of default, stating:
Based upon the testimony, particularly in light of the fact that it doesn't matter to me whether Mr. Habash employed his nephew and the driver, or he contracted with the nephew and driver, there were * * * physical contacts with the State of Louisiana on that fourteenth load, and I don't see that that's - it doesn't appear to be disputed. Mr. Habash said, yes, that did happen. There were regular contacts also in terms of a relationship from 2014 to 2015. Fourteen loads of animals for slaughter is a lot of loads in a short period of time. At least, I would think so, particularly when you look at the cost of the animals that were purchased.
* * *
It doesn't seem to be any dispute that the individuals involved in this LLC, Musa Simreen and Michael Habash, are not residents of Tampa, Florida.
* * *
Nevertheless, there were regular contacts and frequent contacts with J & J Livestock * * * and those were by telephone and by payment either wire transfers, interstate commerce had to be used, or the post office depending upon whether checks were sent, and although there was some dispute as to payment by check, there was still instrumentalities involved in interstate commerce for the payment of these. The livestock was delivered to Tampa, Florida, from Claiborne Parish, Louisiana, and at one point, that would be April 28, 2015, Mr. Habash, as an employee of Musa Slaughterhouse, engaged a driver and someone else to pick up the livestock in Claiborne Parish, Louisiana. I feel like that's sufficient minimum contact for establishing the personal jurisdiction under *1238 the provisions and authority of International Shoe versus Washington , and the cases following that. * * * It is litigation that was filed specifically related to those contacts. So, I do think that prong of the personal jurisdiction has been met.
With regard to Mr. Habash's statement that he did not know of the certified mail that was sent to Musa Slaughterhouse's address * * * I cannot imagine that no one in that office said to either Mr. Habash or Mr. Simreen, hey, we've got certified mail that's come here. I just don't believe that.
* * *
The defendants now appeal.[4]
DISCUSSION
The defendants contend the trial court erred in denying their petition to nullify and stay the execution of the judgment of default. They argue that they "lacked sufficient contacts with the state of Louisiana to establish in personam jurisdiction under the United States Constitution." Therefore, according to the defendants, the default judgment is an absolute nullity.
The Louisiana long-arm statute provides for the exercise of personal jurisdiction over a nonresident, who acts directly or through an agent, as to a cause of action arising from specific enumerated activities performed by the nonresident, including (for purposes of this matter) transacting any business in this state. La. R.S. 13:3201(A)(1). Additionally, La. R.S. 13:3201(B) provides:
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Comment (d) to La. R.S. 13:3201 explains:
(d) "Transacting business", as used in Subdivision (a), is a term which is much broader than "doing business" as defined by earlier Louisiana cases, and the phrase "does ... business" of Subdivision (d) conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase "engaged in a business activity" of R.S. 13:3471(1).[5 ]
The following is applicable to the exercise of personal jurisdiction over a nonresident defendant:
The limits of the long-arm statute and constitutional due process are coextensive, and the sole jurisdictional inquiry is an analysis of constitutional due process requirements. Ruckstuhl v. Owens Corning Fiberglas Corp. , 98-1126 (La. 4/13/99), 731 So.2d 881, cert. denied , 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999) ; Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc. , 48,827 (La. App. 2 Cir. 4/9/14), 138 So.3d 776, writ denied , 2014-0965 (La. 8/25/14), 147 So.3d 1119.
In order to subject a nonresident defendant to personal jurisdiction, due process requires that the defendant have certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington , 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ; Ruckstuhl , supra ;
*1239 Devillier v. Farmers Ins. Exch. , 49,562 (La. App. 2 Cir. 1/14/15), 161 So.3d 993. In applying the "minimum contacts" prong, the United States Supreme Court has differentiated between general and specific jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ; Devillier , supra . A state exercises general jurisdiction when the defendant's contacts with the state are not related to the lawsuit. Specific jurisdiction, on the other hand, is exercised when the suit arises out of or is related to the defendant's contacts with the forum. Greenway Leasing, L.P. v. Star Buffet Management, Inc. , 45,753 (La. App. 2 Cir. 1/26/11), 57 So.3d 397. The two-part minimum contacts/fairness analysis applies to the assertion of both specific and general jurisdiction. de Reyesv. Marine Mgmt. and Consulting, Ltd. , 586 So.2d 103 (La. 1991).
When a forum seeks to exercise specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant's purposeful direction of its activities at a resident of that forum with litigation resulting from alleged injuries arising out of or related to those activities satisfies the requirement of meaningful minimum contacts. de Reyes , supra ; Greenway Leasing , supra . An act committed outside the state that has consequences or effects in the state will suffice as a basis for jurisdiction in a suit arising from those effects if the consequences or effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. Devillier , supra ; Lifecare Hospitals, Inc. v. B & W Quality Growers, Inc. , 39,065 (La. App. 2 Cir. 10/27/04), 887 So.2d 624, writ denied , 2004-2935 (La. 2/4/05), 893 So.2d 872, citing Guidry v. United States Tobacco Co., Inc. , 188 F.3d 619 (5th Cir.1999). However, when the cause of action does not arise out of the defendant's purposeful contacts with the forum, due process requires that the defendant be engaged in continuous and systematic contact to support the exercise of general jurisdiction. Devillier , supra ; Lewis , supra .
Contacts may be effected by mail and electronic communication, as well as physical presence. Greenway Leasing , supra , citing Spomer v. Aggressor Intern., Inc. , 2000-1646, (La. App. 1 Cir. 9/28/01), 807 So.2d 267, writ denied , 2001-2886 (La. 1/25/02), 807 So.2d 250.
The second phase of the analysis is a determination of the fairness of the assertion of jurisdiction. The defendant's conduct and connection with the forum state must be such that it should reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ; Greenway Leasing , supra .
Once the plaintiff proves the defendant has sufficient minimum contacts to meet his burden of proof, a presumption of reasonableness of jurisdiction develops. Then the burden shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice that the presumption of reasonableness created by the defendant's minimum contacts with the forum is overcome. Spomer , supra .
In Asahi Metal Indust. Co. v. Superior Court , 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Court directed that the forum court examine the following to determine reasonableness of the jurisdiction: the defendant's burden in litigating in the forum state, the forum state's interest, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies.
*1240 An appellate court conducts a de novo review of a trial court's legal ruling on an exception of lack of personal jurisdiction. Devillier v. Farmers Ins. Exch. , supra ; Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc. , supra ; Greenway Leasing, L.P. , supra .
In the instant case, it is undisputed that the plaintiff's lawsuit arose out of and is related to the defendant's contacts with Louisiana. Consequently, the primary issue is whether the defendants had sufficient contacts with Louisiana such that the maintenance of this lawsuit does not offend the traditional notions of fair play and substantial justice.
In IberiaBank v. Thornton , 45,332 (La. App. 2 Cir. 6/23/10), 44 So.3d 720, the bank filed a lawsuit against the defendants as guarantors of various loans made by the bank to the borrower (a company owned by the individual defendants). The bank was organized and domiciled in Louisiana; the defendants and their company were residents of Arkansas. Over a period of approximately three years, the bank made multiple loans to the defendants, the amounts of which exceeded $15 million. Thereafter, the defendants defaulted on the loans and the bank filed a lawsuit in Louisiana. The defendants filed an exception arguing that Louisiana did not have personal jurisdiction over them. The district court denied the exception and granted summary judgment in favor of the bank. On appeal, this Court affirmed, stating:
Defendants make much of the fact that neither set foot in Louisiana. We note that jurisdiction may not be avoided merely because the defendants did not physically enter the forum state. A review of the record makes clear that all of the loan documents, including the guaranties identified the Iberia office in Monroe, Louisiana, and it was also the location where the payments on notes were made.
Id. at 723 (internal citation omitted).
Herein, the record reveals that Habash, acting on behalf of Musa Slaughterhouse, contacted Garcia at his place of business in Claiborne Parish, Louisiana, regarding the purchase of livestock. The parties developed an ongoing business relationship, and over the next several months, Habash and Garcia made multiple business transactions, resulting in the purchase, transport, and slaughter of approximately $500,000 worth of livestock. Habash, who was in the habit of transacting business with various livestock companies on behalf of Musa Slaughterhouse, testified that he knew he was transacting business with a Louisiana company. Further, the defendants do not dispute that the transactions were made, and they did not dispute the amount of the debt owed.
Louisiana has a strong interest in protecting its corporate citizens who have sustained any injury. See IberiaBank , supra . Additionally, the plaintiff is entitled to convenient and effective relief, and should not be expected to travel to Florida to litigate issues that were created and consummated in Louisiana. We find that by incurring and failing to pay a debt owed to a Louisiana company, with whom they had established an ongoing business relationship, Habash and Musa Slaughterhouse should reasonably have anticipated being haled into court in Louisiana. Consequently, we find that there are sufficient minimum contacts with the forum state to establish personal jurisdiction over Habash and Musa Slaughterhouse.
However, according to the testimony of the witnesses, Musa Simreen did not negotiate the terms of the contract, order livestock or make any payments to the plaintiff, either individually or on behalf *1241 of Musa Slaughterhouse. Therefore, the plaintiff failed to prove that Simreen had sufficient minimum contacts with the state of Louisiana. Consequently, we find that Louisiana does not have personal jurisdiction over Simreen, and the default judgment rendered against him is an absolute nullity and is hereby reversed.
CONCLUSION
For the foregoing reasons, the default judgment against the defendants, Musa Slaughterhouse, L.L.C. and Michael Habash, is affirmed. The default judgment against the defendant, Musa Simreeen, is hereby reversed. Costs of this appeal are assessed to the defendants, Musa Slaughterhouse, L.L.C. and Michael Habash.
AFFIRMED IN PART; REVERSED IN PART.

Garcia testified that "three or four" men came from Florida to select/buy/transport the livestock. Habash testified that he was unaware of anyone, other than his nephew and a driver he had hired, traveling to Louisiana.

According to the plaintiff's brief, a Florida court denied the defendants' petition to stay the sale of the property. Conversely, the defendants maintain that the stay was issued pending the instant proceedings. The proceedings in Florida are not a part of this record and will not be addressed in this appeal.

Habash testified that Musa Simreen resides in New York, is a paraplegic, and has not traveled to Florida for several years.

The trial court's ruling with regard to the sufficiency of service of process was not appealed. Therefore, that ruling is not before us and will not be addressed in this opinion.

La. R.S. 13:3471(1) contains supplementary rules for service of process.