939 So.2d 533 (2006)
STERIFX, INC., Plaintiff-Appellant
v.
Ernest G. RODEN, Defendant-Appellee.
No. 41,383-CA.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2006.
*534 Hargrove, Smelley, Strickland & Langley, by Glenn L. Langley, T. Issac Howell, Shreveport, for Appellant.
Hayes, Harkey, Smith & Cascio, by Thomas M. Hayes, III, Monroe, McNew, King, Mills, Burch & Landry, by Brady D. King, II, Monroe, for Appellees.
Before GASKINS, CARAWAY and DREW, JJ.
GASKINS, J.
In this suit alleging unfair trade practices, the plaintiff, SteriFx, Inc., appeals a trial court judgment granting exceptions of lack of personal jurisdiction filed by three nonresident defendants. We affirm.

FACTS
SteriFx, Inc. (originally Stericon, Inc.), markets and sells a patented disinfectant product used in various industrial, nutritional and medical applications. This Louisiana corporation was formed in July 2001, and its principal place of business was in Shreveport, Louisiana. Ernest Roden, a Louisiana resident, was an employee of SteriFx from its inception through 2003, and he worked as a consultant in 2004. Roden and the company entered into confidentiality agreements in 2001 and 2002. The terms of these agreements called for Roden to refrain from competing against SteriFx or soliciting its customers for two years after his employment ended.
*535 ACT Specialty Chemicals, Inc., was created in 2002 in Louisiana by Frank Gigliotti and Jason York. It was formed as a chemical company to market primarily coagulants and polymers to industrial and municipal water and wastewater treatment application customers. It functioned in several southern states, including Mississippi, Arkansas, Texas, and Louisiana. ACT does not manufacture its products, instead it contracts with a manufacturer or toll blender to make a formula it owns.
In 2002, York and Gigliotti hired Albert Supik to work for ACT. Randall Allen also began to work for ACT.
In about June 2004, Allen met Roden. Thereafter, at a dinner meeting in Ruston, Louisiana, Allen introduced Roden to Gigliotti and Supik, who were traveling from Mississippi to Texas on ACT business. Roden subsequently went to work for ACT.
Synergy Technologies, Inc., was created in Maryland in August 2004 by Supik. The directors of Synergy are Supik, Gigliotti, York, Allen, and Roden. According to York and Supik, Synergy was formed to separate it from ACT to market both wastewater treatment products and antimicrobial products to the food processing industry, along with other industries. They wanted to reward and bring into the corporate structure all the people involved in it. Synergy's main product was Syntrx 3200, a safe acid product also sold by ACT.
In June 2005, SteriFx, Inc., filed this suit against Roden, contending that, among other things, he was in breach of the noncompetition covenant and that he helped found Synergy, a competing business. The suit further asserted violations of the Louisiana Unfair Trade Practices and Consumer Protection Law and the Louisiana Uniform Trade Secrets Act.
In August 2005, SteriFx added Synergy, a Maryland corporation, as a defendant. Also added as defendants were Supik and Gigliotti, both of Maryland; York, a Tennessee resident; and Allen, a Louisiana resident. It alleged that these parties were complicit in Roden's violation of his agreements with SteriFx.
In October 2005, an exception of lack of personal jurisdiction was filed by Synergy, Supik, Gigliotti and York. The exception was submitted to the court on briefs and with deposition extracts and other documentary evidence. In December 2005, the trial court overruled the exception as to Synergy. However, the exception was granted as to Supik, Gigliotti and York. In its oral reasons for ruling, the trial court found that the men lacked sufficient contacts with the state of Louisiana to subject them to personal jurisdiction here. Judgment in conformity with these rulings was signed on January 24, 2006.
SteriFx appeals from the granting of the exception of lack of personal jurisdiction as to Supik, Gigliotti and York.

LAW
Appellate courts when reviewing a trial court's legal ruling on a declinatory exception of lack of personal jurisdiction apply a de novo standard. Walker v. Super 8 Motels, Inc., 2004-2206 (La.App. 4th Cir.12/7/05), 921 So.2d 983. However, the trial court's factual findings underlying the decision are reviewed under the manifest error standard of review. Diamond v. Progressive Security Insurance Company, XXXX-XXXX (La.App. 1st Cir.3/24/06), 934 So.2d 739; Peters v. Alpharetta Spa, L.L.C., XXXX-XXXX (La.App. 1st Cir.5/6/05), 915 So.2d 908. In Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993), the Louisiana Supreme Court established that when reviewing factual findings on appeal, a court *536 of appeal may not set aside a trial court's or a jury's finding of fact unless the finding is manifestly erroneous or clearly wrong; where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. When the trial court is presented with two permissible views, its choice between them cannot be manifestly erroneous.
At a contradictory hearing on an exception of lack of personal jurisdiction, evidence is admissible to resolve the exception. La. C.C.P. art. 930. If evidence is admitted at such a hearing, the exception must be resolved on the evidence presented, rather than on the allegations in the petition. Exposition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P., XXXX-XXXX (La.App. 4th Cir.3/10/04), 869 So.2d 934.
The Louisiana long-arm statute, La. R.S. 13:3201, provides, in relevant part, for the exercise of personal jurisdiction over a nonresident defendant by stating that:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
. . .
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Subsection B was added in 1987 to ensure that jurisdiction under the long-arm statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 418.
Due process requires that, in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991).
The due process test has evolved into a two-part test, the first part being the "minimum contacts" prong, which is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. Ruckstuhl v. Owens Corning Fiberglas Corporation, XXXX-XXXX (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). By requiring that a defendant must have purposefully *537 availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, the requirement ensures that he will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes v. Marine Management & Consulting, Ltd., supra; Alonso v. Line, 2002-2644 (La.5/20/03), 846 So.2d 745, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311 (2003).
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Hence, once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." de Reyes v. Marine Management and Consulting, Ltd., supra. In determining this fundamental fairness issue, the court must examine (1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies. Ruckstuhl v. Owens Coming Fiberglas Corporation, supra.
In the de Reyes case, the Louisiana Supreme Court discussed the types of personal jurisdiction:
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction  "general" and "specific" jurisdiction. "It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising `specific jurisdiction' over the defendant." But when a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendant. [Citations omitted.]
It is settled that jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself. Cobb Industries, Inc. v. Hight, 469 So.2d 1060 (La.App. 2d Cir.1985); Fuller v. American Recreational Vehicles, XXXX-XXXX (La.App. 3d Cir.12/12/01), 801 So.2d 642.
In Escoto v. U.S. Lending Corporation, 95-2692 (La.App. 4th Cir.5/22/96), 675 So.2d 741, writ denied, 96-1634 (La.9/27/96), 679 So.2d 1343, that court discussed this lack of jurisdiction over corporate officers:
This doctrine is often times referred to as the "fiduciary shield doctrine" and has its origin in judicial interpretations of long-arm statutes. It is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity. When dealing with corporate officers, a court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state. If an officer or employee is engaged in activities within the forum states' jurisdiction which would subject them to the state's long arm statute, jurisdiction by that state may be proper. Furthermore, if the corporation is not viable and the individuals are using it as a shield to conduct their personal activities a court may feel *538 compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals. [Citations and footnote omitted.]
See also Cobb Industries, Inc. v. Hight, supra.
The exception to the fiduciary shield doctrine recognized in Escoto of necessity involves the officer/agent's acting outside of his legitimate corporate authority or shield. The officer therefore individually commits a tortious offense which becomes the crucial factor for the exercise of specific jurisdiction over him. Office Dimensions-Louisiana, Inc. v. King, 31,139 (La.App. 2d Cir.9/23/98), 718 So.2d 1052.
To "pierce the corporate veil" or find that a corporation is an alter ego of an individual, the courts traditionally look to five factors that, when considered with the totality of the evidence, indicate that the individual and the corporation were not actually separate entities: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder or director meetings. Riddle v. Simmons, 40,000 (La.App. 2d Cir.2/16/06), 922 So.2d 1267, writ denied, XXXX-XXXX (La.6/2/06), 929 So.2d 1259.

DISCUSSION
The plaintiff contends that the trial court erred in granting the exception of lack of personal jurisdiction as to Supik, York and Gigliotti, the three directors of Synergy who were not Louisiana residents. The plaintiff argues that these individuals had sufficient contacts with Louisiana to warrant the court's exercise of jurisdiction. Also, according to the plaintiff, application of the "fiduciary shield doctrine" would produce an inequitable result because Supik, York and Gigliotti all sought the personal benefits afforded by Louisiana laws through the marketing and sales of the product Syntrx 3200 in Louisiana though ACT and/or Synergy.
Albert P. Supik
Supik is a lifelong resident of Maryland. In 2002, Gigliotti and York hired him to work for ACT, which was selling water treatment speciality chemicals. He was hired because he had established business contacts in the paper industry which he could bring to ACT. He testified that he was not headquartered in Louisiana after he began working for ACT and that he never traveled to Louisiana to call on customers. Only his first meeting with Roden in June 2004 occurred in Louisiana. Supik has not personally marketed, tested or sold Syntrx 3200 in Louisiana. He and Gigliotti have a patent application pending on Syntrx 3200.
Jason York
York lived in Louisiana from January 1999 to April 2003, at which time he moved to Tennessee. When he relocated, ACT likewise moved to Tennessee and became headquartered in Memphis. Since moving to Tennessee, York has been back to Louisiana eight to ten times for business. Some of these trips were on ACT business. On behalf of Synergy, he visited Pilgrim's Pride in Farmerville (testing Syntrx 3200 in mid-2005 to collect data for its USDA protocol) and the House of Raeford in Arcadia (making a sales call).
Frank Gigliotti
Gigliotti has lived in Maryland for more than 30 years and he has never lived in Louisiana. When ACT was headquartered in Louisiana, he spent only about 10 days to two weeks per year there. He came south to work with York about 12 times per year, but most of the time was spent in Mississippi and Arkansas. After ACT moved its headquarters out of Louisiana, *539 he came here maybe once per year to see Allen.
The only complaint made against these defendants in the petition was that they were "complicit" in the violation of "these agreements." The agreements referenced are Roden's employment-related contracts which were signed in 2001 and 2002. Synergy, which was incorporated in August 2004, is a foreign corporation which had sufficient minimum contacts with Louisiana to confer jurisdiction over it. The three non-Louisiana corporate agents/directors' contacts with Louisiana were made in their corporate capacities. Contacts made outside this corporate capacity, if any, and in their personal or individual capacity, were not sufficient to meet the "minimum contacts" requisite. The plaintiff did not allege any damage arising out of an offense or quasi-offense committed through an act or omission in this state. Rather, the plaintiff's complaint against these defendants concerned their alleged complicity in the violation of Roden's agreements with the plaintiff. Also, the plaintiff did not carry its burden in showing that Synergy was not a viable corporation or that it was merely a shield for these defendants. The plaintiff failed to show sufficient personal or individual contacts or tortious behavior which would subject these defendants to the jurisdiction of Louisiana. We, therefore, affirm the trial court's action in sustaining the exception of lack of personal jurisdiction as to the defendants York, Supik, and Gigliotti.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.