STEWART, J.
IsMoser Rides, S.r.l. (“Moser”), an Italian company that manufactures and sells amusement rides and a defendant in this matter, seeks review of the denial of its declinatory exception of lack of personal *779 jurisdiction. At issue is whether the Due Process Clause of the Fourteenth Amendment denies Louisiana courts personal jurisdiction over this foreign defendant whose only contacts with the state include a single sale of an amusement ride in 2007 to a Baton Rouge business and the actions of third parties who brought Moser-manu-factured rides to Louisiana for use at various fairs. Finding that the requirements for the assertion of personal jurisdiction are not met, we reverse the trial court’s judgment denying Moser’s declinatory exception.
FACTS
Sheldon Lewis, a minor child, was injured on November 2, 2011, on a Twin Ring Demolition Derby amusement ride (“the ride”) at the State Fair of Louisiana. Moser manufactured the ride. On November 4, 2011, Lakhesia Lewis and Sheldon Hallmon, individually and on behalf of Sheldon, filed suit for damages against Pine Belt Multipurpose Community Action Acquisition Agency, Inc. (“Pine Belt”), the group that took Sheldon to the fair; Lowery Carnival Company, Inc. (“Lowery”), an Alabama corporation and the owner and operator of the ride; Bryan Pelligrin, Lowery’s employee; and the State Fair of Louisiana. Lowery filed a third party demand against Moser, and on October 8, 2012, the plaintiffs filed a fourth amended petition naming Moser as a defendant.
As to the demands of Lowery and the plaintiffs, Moser filed the declinatory exception of lack of personal jurisdiction. On June 19, 2013, the |atrial court heard arguments on Moser’s exception and accepted into the record all memoranda and exhibits introduced by the parties.
In support of its exception, Moser offered the affidavit of its managing director, Alfeo Moser (“Mr. Moser"), a citizen of Italy. The affidavit states that Helm & Sons Amusements (“Helm”) of Colton, California, ordered the ride in February 2007. Rides 4U of Somerville, New Jersey, acted as broker for the transaction. The ride was manufactured in Ostiglia, Italy, and shipped from Genoa, Italy, in May 2007 for delivery to Helm via the port of Long Beach, California. Around the time of the sale, Moser mailed to Helm in California the maintenance and operation manual, the calculation and technical drawing, the electrical manual, and the setup manual for the ride. Following the sale to Helm, Moser had no further involvement with the ride.
With regard to any contacts with Louisiana, Mr. Moser’s affidavit states that Moser sold an amusement ride to a Louisiana customer on one occasion. In December 2007, Moser sold a “Sidewinder” ride directly from Italy to Dixie Landing, LLC, in Baton Rouge. Otherwise, the affidavit states that Moser is not and has never been registered to do business in Louisiana, has never had a registered agent here, has never owned or leased property here, has never had offices, officers or employees here, and has never had a Louisiana address or telephone number. Furthermore, Moser has never had bank accounts, applied for loans, made any business purchases, or paid taxes in Louisiana. Lastly, Moser has never manufactured anything here, nor has it ever directed marketing activities to Louisiana. Exhibits verifying the sale to Helm and the shipment of the ride to California were attached to the affidavit.
|4Moser also offered excerpts from the deposition of Tony Lowery (“Mr. Lowery”), whose family owns and runs Lowery. Mr. Lowery testified that Lowery acquired the ride the first week of August 2011 from Charter Finance of Greer, South Carolina. He explained that Charter Finance brokers carnival rides and that *780 he had bought several rides from it. He stated that Charter Finance told him about the ride and that he did call Dave Helm before purchasing it. Mr. Helm told him it was a good ride but that Helm had to give it up due to a bad season and financial problems. Lowery purchased the ride from Charter for about $100,000. The ride was shippied to Lowery by truck from South Carolina to a fairgrounds in Washington, Missouri. Lowery obtained the manuals pertaining to the ride from Helm. After obtaining the ride, Lowery used it weekly until the occurrence of the accident in Louisiana.
Opposing Moser’s exception, the plaintiffs offered excerpts from the deposition of Daniel Andrus, a mechanical inspector of amusement rides for the Louisiana State Fire Marshal’s Office. Andrus inspected the ride prior to the accident and spoke with Tony Lowery about how it works. Andrus stated that he previously inspected other Moser rides, such as his yearly inspection of the Moser ride at Dixie Landing in Baton Rouge. He indicated that inspectors for the fire marshal’s office see Moser rides regularly throughout the state and have inspected such rides “multiple times.” He also testified as to his understanding that Moser rides are operated nationwide and are not uncommon. Andrus stated that a person identified as Donnie Lesage contacted Moser after the accident as part of the fire marshal’s investigation. Andrus explained that the inspectors call ride manufacturers Irregularly, but he could not say for a fact that Moser had ever been contacted before this incident.
While Moser argued that its evidence established a lack of minimum contacts with Louisiana, the plaintiffs argued that Moser purposefully directed activities in Louisiana as evidenced by the sale of a ride to Dixie Landing in 2007 and the presence of other Moser rides in the state. Plaintiffs further argued that the Louisiana long-arm statute allows for the assertion of personal jurisdiction where Moser placed the ride into the stream of commerce. After hearing the arguments, the trial court opined that the facts do not support specific jurisdiction and that the assertion of personal jurisdiction over Moser would have to be based on general jurisdiction. The trial court’s denial of Moser’s exception suggests that it found sufficient minimum contacts for the exercise of general jurisdiction.
After the trial court’s judgment denying its exception, Moser sought supervisory review before this court. On October 10, 2013, this court granted Moser’s writ, ordering that the matter be briefed and submitted for a decision on the next available appellate calendar.
DISCUSSION

Arguments of the Parties

Moser argues that it does not have sufficient minimum contacts with Louisiana to support the exercise of personal jurisdiction over it. Moser asserts that the facts, including the one-time sale of a ride to Dixie Landing, do not establish that it has had continuous and systematic contacts with | r,Louisiana. Moser also asserts that specific jurisdiction is not applicable because the plaintiffs’ suit does not arise out of and is not related to its limited contact with Louisiana. Moser argues that the presence of the ride in Louisiana through the unilateral act of a third person was a random, fortuitous, and unforeseeable event that does not support the exercise of personal jurisdiction over it.
The plaintiffs and Lowery, who both oppose Moser’s exception, assert that personal jurisdiction may be exercised under Louisiana’s long-arm statute, La. R.S. *781 13:3201, because Moser manufactured the ride, placed it into the stream of commerce, and could have foreseen, realized, or expected that the ride would end up in Louisiana. They note that numerous Mos-er rides have made their way to Louisiana and that Moser has been contacted on numerous occasions by the fire marshal’s office about its rides. They also assert that the continuing presence of the Moser-manufactured ride at Dixie Landing and Moser’s marketing practice of placing its rides in the stream of commerce show that it purposefully engaged in commerce in Louisiana and availed itself of the protection of Louisiana law, thus submitting itself to the jurisdiction of Louisiana courts.

Applicable Law

An appellate court conducts a de novo review of a trial court’s legal ruling on an exception of lack of personal jurisdiction, but any factual findings underlying the decision are reviewed under the manifest error standard. Maguire Plastic Surgery Center, LLC v. Booker, 47,929 (La. App.2d Cir.5/22/13), 117 So.3d 239; SteriFx, Inc. v. Roden, 41,383 (La.App.2d Cir.8/25/06), 939 So.2d 533. With regard to the burden of proof, |7the Louisiana Supreme Court has explained that when there is a contradictory evidentiary hearing on the exception, the plaintiffs burden is to prove facts supporting jurisdiction by a preponderance of the evidence, de Reyes v. Marine Management & Consulting, Ltd., 586 So.2d 103 (La.1991). However, where the exception is decided on the pleadings, memoranda, and depositions, the plaintiff, as the nonmoving party, bears a relatively slight burden and all reasonable inferences from the record and the allegations of the complaint are to be drawn in the nonmoving party’s favor. Id.
The Louisiana long-arm statute provides for the exercise of personal jurisdiction over a nonresident, who acts directly or through an agent, as to a cause of action arising from specific enumerated activities performed by the nonresident, including for purposes of this matter La. R.S. 13:3201(A)(8):
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer’s marketing practices.
Additionally, La. R.S. 13:3201(B) states:
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Interpreting these two sections of the long-arm statute, the supreme court has explained that the relevant inquiry is not the stream of commerce language of La. R.S. 13:3201(A)(8), but rather the broader jurisdictional provision of subsection (B), which allows Louisiana courts to exercise personal | ¿jurisdiction over nonresidents to the fullest extent of the U.S. Constitution. Ruckstuhl v. Owens Coming Fiberglas Corp., 98-1126 (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). Now, the limits of the long-arm statute and constitutional due process are coextensive, and the sole jurisdictional inquiry is an analysis of constitutional due process requirements. Id.; Petroleum Helicopters, Inc. v. Avco Corp., 513 So .2d 1188 (La.1987).
Before a nonresident defendant may be subjected to judgment, due process requires that the defendant have sufficient minimum contacts with the forum *782 state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. J. McIntyre Machinery, Ltd. v. Nicastro, — U.S. —, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The due process inquiry involves a two-pronged test which examines whether there are the sufficient “minimum contacts” and, if so, the fairness of exercising personal jurisdiction over the defendant. A & L Energy, Inc. v. Pegasus Group, 2000-3255 (La.6/29/01), 791 So.2d 1266, cert. denied, 534 U.S. 1022, 122 S.Ct. 550,151 L.Ed.2d 426 (2001).
The minimum contacts prong is satisfied by a single act or actions by which the defendant “purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Ruckstuhl, supra. By its actions, l^the nonresident defendant should reasonably anticipate being haled into court in the forum state. Ruckstuhl, supra. This requirement ensures that a nonresident defendant “will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person.” SteriFx, 41,383, p. 5-6, 939 So.2d at 537; de Reyes, supra.
The fairness prong arises once the plaintiff meets the burden of proving minimum contacts, at which point jurisdiction is presumed reasonable and the burden shifts to the defendant to prove that the “assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum.” SteriFx, 41,383, p. 6, 939 So.2d at 537; de Reyes, supra.
In applying the “minimum contacts” prong, the United States Supreme Court has differentiated between “general” and “specific” jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, — U.S.—, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011); A & L Energy, supra. Stated simply, general jurisdiction is exercised when a defendant’s contacts with the state are not related to the plaintiffs suit, whereas specific jurisdiction is exercised when the suit arises out of or is related to the defendant’s contacts with the forum state. Greenway Leasing, L.P. v. Star Buffet Management, Inc., 45,753 (La. App.2d Cir.1/26/11), 57 So.3d 397, citing Frederic v. Zodiac Development, 2002-1178 (La.App. 1st Cir.2/14/03), 839 So.2d 448.
| ipFor specific jurisdiction, the defendant must have purposefully directed activities at the forum and / or its residents, and the litigation must result from alleged injuries that arise from or relate to those activities. Burger King Corp., 471 U.S. at 472, 105 S.Ct. at 2182; Greenway Leasing, supra. When the cause of action does not arise out of the defendant’s purposeful contacts with the forum state, the defendant’s contacts with the forum must be “continuous and systematic” to support the exercise of general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); de Reyes, supra; Greenway, supra.
In Goodyear, supra, the U.S. Supreme Court found that the “stream of commerce” theory was an inadequate basis for the exercise of general jurisdiction and limited its application to specific jurisdiction. The Supreme Court stated that the *783 “[f]low of a manufacturer’s products into the forum ... may bolster an affiliation germane to specific jurisdiction ... [b]ut ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant.” Id., 131 S.Ct. at 2855.
The stream of commerce concept provides that a forum state may assert personal jurisdiction over a business that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the foreign state and cause injury there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); American Valve Mfg. Co. v. Valvo Industria Ing Rizzio, 28,942 (La.App.2d Cir.12/11/96), 685 So.2d 1156, writ denied, 97-0120 (La.3/7/97), 689 So.2d 1378. The Supreme Court explained that the “foreseeability” required by due process is not “the mere likelihood that a product will find its way to the forum state ... it is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
The stream of commerce requirements remain unsettled. In Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court split on whether more purposeful activity directed at the forum state, other than the mere placement of a product in to the stream of commerce, is required. This is referred to as the “stream of commerce plus” theory.[1]
In another split opinion in J. McIntyre Machinery, supra, five justices agreed that the exercise of jurisdiction over a defendant requires more than that the defendant might have predicted that its goods would reach the forum state; rather, they would require some action by which the defendant targeted the forum. In that case, the plaintiff was injured in New Jersey while using a machine manufactured in England by the defendant. The defendant had sold the machine to a U.S. distributor, which then sold and | ^shipped it to New Jersey where the injury occurred. The New Jersey Supreme Court found that its state courts could exercise jurisdiction over the defendant, but the Supreme Court reversed. It was not persuaded by the facts that the distributor sold the defendant’s machines in the U.S., that the defendant-manufacturer’s representatives had attended trade shows in several states, and that four of its machines had ended up in New Jersey. The opinion noted that J. McIntyre had no New Jersey office or employees, paid no taxes there, owned no property, and did not advertise there. While the manufacturer may have intended to serve the U.S. market, the facts did not show that it purposefully availed itself of the New Jersey market. Id., 131 S.Ct. at 2790. Justices Breyer and Alito concurred in the judgment, stressing that the issue could be resolved by adhering to the Court’s precedents, none of which support the assertion that a single isolated sale is sufficient for the exercise of personal jurisdiction. They found that the facts showed no regular *784 flow or course of sales in New Jersey nor “special state-related design, advertising, advice, marketing, or anything else.” Id., 131 S.Ct. at 2792.

Analysis:

The trial court did not make any factual findings in ruling on Moser’s exception. Therefore, the trial court’s ruling is subject to a de novo review on appeal. Prior to its denial of Moser’s exception, the trial court indicated that it would have to find general jurisdiction because it did not view this as a specific jurisdiction case. However, our review of the record does not show that Moser had minimum contacts with the state necessary to support the exercise of either general or specific jurisdiction. In reaching this Indecision, we find this matter to be analogous to Broussard v. Diamond Aircraft Industries, Inc., 2010-1611 (La.App. 1st Cir.5/3/11), 65 So.3d 187, which affirmed the trial court’s judgment in favor of the defendant on an exception of lack of personal jurisdiction upon finding that evidence did not show that Diamond had sufficient minimum contacts to satisfy the requirements of either general or specific jurisdiction.
In Broussard, supra, Diamond Aircraft Industries, Inc. (“Diamond”), a Canadian corporation based in London, Ontario, manufactured and sold the aircraft to Premier Aircraft Sales, Inc. (“Premier”), a broker incorporated in Florida. The plaintiff purchased the aircraft from Premier. Premier flew the plane from Alabama, where it had been stored, to the plaintiff in Louisiana. Premier then flew the plaintiff to Texas for training. Within months, Broussard noticed cracking on the aft passenger door and sued Diamond and Premier, both of whom excepted to the court’s jurisdiction over them. Because Brous-sard dismissed his claims against Premier, only Diamond’s exception was heard. Diamond supported its exception with the affidavit of its president, who attested that the Canadian corporation was never registered to do business in Louisiana, had never owned or leased property here, never had employees or paid taxes here, never applied for loans or made significant business purchases here, and never directed marketing activities here. In affirming the trial court’s ruling in favor of Diamond, the first circuit found that Diamond did not have contacts with this state other than “a minimum number of its manufactured planes ending up in the state.” Id., 2010-1611, p. 6, 65 So.3d at 191. The court noted that Diamond sold the plane in Canada to a Florida corporation and that delivery I ^was in Canada. Broussard then purchased the plane from Premier in Florida. The court concluded that the record did not show that Diamond had minimum contacts with Louisiana such that it purposely availed itself of the privilege of conducting activities here and invoking the benefits and protections of Louisiana law.
Like Diamond, the aircraft manufacturer in Broussard, supra, Moser is a foreign business. It is an Italian company with its principal place of business in Ostiglia, Italy. The affidavit of Moser’s managing director stated that Moser has never been registered to do business in Louisiana, has never had an agent here, has never owned or leased property here, has never had a Louisiana address or telephone number, has never had officers or employees here, has never had bank accounts here, made business purchases, or paid Louisiana taxes. It also states that Moser never directed marketing to Louisiana. Moser did make a onetime sale of an amusement ride to a Louisiana customer, Dixie Landing, in December 2007. Nothing in the record indicates how this sale came about or that it was the result of Moser’s marketing activities or efforts to target Louisiana *785 customers. It is undisputed that the incident at issue does not arise out of and is not related to the sale of the ride to Dixie Landing. Moreover, the Moser affidavit shows that it had no continuous and systematic contacts with Louisiana.
Nothing in the deposition of the inspector for the fire marshal’s office establishes sufficient minimum contacts with the state necessary for the exercise of personal jurisdiction over Moser. Andrus’s deposition merely establishes that the fire marshal’s office inspects amusement rides in the state and some of these have been Moser rides. Andrus testified that | ^inspectors call manufacturers regularly, but he could not say that Moser had ever been contacted prior to the accident at issue. Andrus’s deposition, which describes unilateral activities conducted by the fire marshal’s office in the performance of its duties, does not establish continuous and systematic contacts by Moser with this state. As in the Broussard case, the record here shows that only an unspecified number of Moser rides have ended up in this state, with one ride having been sold to a Louisiana customer and others apparently having been brought to the state by third parties for use at various events on a temporary basis.
In Broussard, supra, the plane manufactured by Diamond was sold through a broker to a Louisiana customer, though the transaction did not occur in this state. Here, the record shows that contacts between Moser and the ride’s ultimate presence in Louisiana are even more attenuated than the connections described in the Broussard case. The ride at issue was sold by Moser through a New Jersey broker to Helm, a California business. The ride was shipped from Italy to Helm in California. Nothing in the record indicates that Moser could have foreseen, realized, expected, or anticipated that a ride sold to a California business would be found in Louisiana. The ride ended up in Louisiana only after Helm lost it to Charter, a North Carolina finance company, which then sold it to Lowery, an Alabama company, and shipped the ride to Lowery in Missouri. Lowery then brought the ride to Shreveport for use during the state fair. It was the random, fortuitous, and unilateral activities of third parties that resulted in the ride ending up in Louisiana where the accident occurred, not purposeful availment by Moser of the privilege of conducting activities in Louisiana.
hfiWe note that the record is silent as to the scope of Moser’s sales in this country. In McBead Drilling Co. v. Kremco, Ltd, 509 So.2d 429, 432 (La.1987), the supreme court noted the “significant differences” in product liability cases “between the exercise of jurisdiction over a retailer who simply sold the product locally and the exercise of jurisdiction over a manufacturer whose products were sold over a large area.” In that case, the defendant-manufacturer excepting to in personam jurisdiction sold oil field equipment in 12 states. The rig that caused injury in Louisiana was sold to an Arkansas company located in the Ark-La-Tex drilling area and had been serviced in Louisiana by a representative of the manufacturer a week before the rig collapsed. Based on the way the defendant conducted its business and the nature of its product, the supreme court concluded that “it should have reasonably anticipated being haled into court in Louisiana if the product caused damages here [.]” Id. at 433. Here, the record does not indicate that Moser, by the conduct of its business or the nature of its product, should have reasonably anticipated being haled into court because of injury caused by the ride sold to a California business with no apparent connection to Louisiana.
*786 Even considering the slight burden on the nonmoving party in the absence of a contradictory hearing, we find that the plaintiffs and Lowery have not met the burden of proving the minimum contacts necessary for the exercise of personal jurisdiction over Moser. Therefore, we need not address the fairness prong of the due process inquiry for exercising personal jurisdiction over a foreign defendant.
CONCLUSION
117For the foregoing reasons, we reverse the trial court’s judgment and render judgment in favor of Moser, granting its decli-natory exception of lack of personal jurisdiction and dismissing the claims against it. Costs are assessed equally between the plaintiffs and Lowery.
REVERSED.

. As discussed in Jacobsen v. Asbestos Corp., Ltd.., 12-655, p. 15 (La.App. 5th Cir.5/30/13), 119 So.3d 770, 780, a number of Louisiana courts have adopted the "stream of commerce plus” theory in defective product cases, to-wit: Langley v. Oxford Chemicals, Inc., 25,596 (La.App.2d Cir.3/30/94), 634 So.2d 950; Cadawas v. Skibsaksjeselskapet Storli, Bergen, 630 So.2d 289 (La.App. 5th Cir. 1993); J. Wilton Jones Co. v. Touche Ross & Co., 556 So.2d 67 (La.App. 4th Cir. 1989).