Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,434-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

\* \* \* \* \*

HUNT GUILLOT AND                                Appellants
ASSOCIATES, LLC

versus

TERRY CLARK, JOHN JACK,                         Appellees
GARY EVANS, KIRK TROSCLAIR
AND RONALD MCCLUNG

\* \* \* \* \*

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 59,111

Honorable Jeffrey Levance Robinson, Judge

\* \* \* \* \*

FISHMAN HAYGOOD, LLP                        Counsel for Appellants
By:  Brent Bennett Barriere
By:  Kristen D. Amond

IRWIN, FRITCHIE, URQUHART &                 Counsel for Appellees,
MOORE, LLC                                  Terry Clark and John Jack
By:  Matthew William Bailey
By:  Kelly E. Brilleaux

HAYES, HARKEY, SMITH &                      Counsel for Appellees,
CASCIO, LLP                                 Gary Evans, Kirk Trosclair,
By:  Thomas Moore Hayes, III                and Ronald McClung
By:  Peter Stokes

\* \* \* \* \*

Before MOORE, COX, and STEPHENS, JJ.

**COX, J.**

This appeal arises out of the Third JDC, Lincoln Parish, Louisiana. Hunt Guillot and Associates, LLC ("HGA") brought suit against Terry Clark, John Jack, Gary Evans, Kirk Trosclair, and Ronald McClung after the defendants failed to pay for services rendered. HGA seeks review of the district court's decision to grant the defendants' exception of prescription. The defendants seek review of the district court's decision to deny their exception of lack of personal jurisdiction. For the following reasons, we affirm the district court's decision.

## FACTS

In 2014, Terry Clark, John Jack, Gary Evans, Kirk Trosclair, and Ronald McClung were all members of a publicly traded company, GreenHunter Resources, Inc. ("GHR"). At that time, GHR was primarily in the business of water management solutions for oil and gas companies. GHR sought to grow its business through building two separate condensate plants in Ohio and West Virginia. In order to complete this goal, GHR formed GreenHunter Hydrocarbons, LLC ("GHH"), which negotiated with and solicited business from HGA. At the time of GHH's inception, Evans was the chairman and chief executive officer, Trosclair was the executive vice president and chief operating officer, and McClung served as senior vice president and chief financial officer. Additionally, Clark and Jack were executives of GHH.

HGA alleges that in early June 2014, Clark and Jack reached out to executives with HGA who were located in Louisiana and placed phone calls

to them on telephone numbers with Louisiana area codes.[1]  On June 6, 2014, HGA, through Dean Roberts, its project manager in Pennsylvania, reached an agreement with Clark and Jack whereby HGA would provide engineering and project management services related to the planning and construction of the two condensate plants.  According to HGA, Clark and Jack requested that HGA begin work on the project immediately.  HGA agreed to begin work as they believed GHH had the necessary preconstruction funding.[2]

On March 31, 2014, GHR publicly filed an annual report on Form 10-K that contained a "going concern" qualification, which auditors require companies to include when there is a serious risk that a company will run out of money within a year.  Additionally, on August 11, 2014, GHR included a going concern qualification in its 10-Q quarterly disclosure.  GHH and GHR also publicly filed an Amendment No. 1 to the Form S-3 Registration Statement with the SEC on October 17, 2014, reiterating doubt that the companies could remain financially solvent.

HGA issued its first invoice on July 10, 2014, in the amount of $40,403.38.  It issued a second invoice on August 5, 2014, in the amount of $77,319.50.  Payments were due within 30 days of the respective invoice dates.  GHH delayed payments for a total of two months before paying them.  After GHH paid these two invoices, Evans instructed Clark and Jack to

---

[1] In the defendants' affidavits, Evans, Trosclair, Clark, and Jack all state that to the best of their knowledge they had no contact with anyone working for HGA who was physically located in Louisiana during 2014.  McClung also stated that he never spoke to or communicated with anyone at HGA nor did he make any decision about whether HGA would be hired or paid.

[2] Typically, preconstruction financing is used to pay for services like completing sets of engineering plans and those plans are then used to secure funding for the construction phase.

make numerous work requests known as "Project Change Notices" ("PCNs"). These PCNs greatly increased the cost of the building project.

Between August 2014 and November 2014, Clark and Jack communicated regularly with HGA. On August 4, 6, 19, 25, and 26; September 4, 18, 24, and 29; and, November 7 and 19, HGA memorialized PCNs that GHH negotiated. During this time, Trott Hunt, a member of HGA, stated in his affidavit that Trosclair and McClung telephoned either him, Glenn Mitchell, or Trotter Hunt in Ruston to assure them that GHH would pay the balance. By January 9, 2015, HGA had $744,751.01 in outstanding and unpaid invoices for work on the project. GHH's executives deflected paying these invoices. As a result of GHH's inaction, HGA stopped working.

On January 15, 2015, HGA filed suit in Pennsylvania for a breach of contract action captioned *Hunt Guillot & Associates, LLC v. GreenHunter Hydrcarbons LLC, et al.*, Case No. 10-000821. On April 29, 2015, Trosclair and Evans met with Trott and Trotter Hunt at HGA's headquarters in Ruston, Louisiana. At this meeting Trosclair and Evans requested that HGA drop the litigation against GHH and provide a new set of plans. According to Trosclair and Evans, GHH had lost the plans that HGA had drafted for them. In return for the new plans, Evans committed to pay $100,000 in the next week.

After the meeting, HGA provided a letter to GHH assuring them that once they received the $100,000 payment, HGA would supply a second set of drawings. Nobody from GHH responded to the letter nor did GHH pay the $100,000. Therefore, HGA pressed forward with its suit. On July 7, 2016, HGA secured summary judgment against GHH in the amount of

3

$744,745.01, plus costs and interest. However, on March 1, 2016, GHH and GHR filed for bankruptcy. HGA failed to perfect its claims in the bankruptcy case, leaving HGA unable to enforce its claims.

HGA engaged in post-judgment discovery of GHH's executives to locate resources and assets to satisfy the judgment. According to HGA, beginning with the deposition of Trosclair on August 29, 2016, HGA learned that it was not dealing with a mere breach of contract, but it was the target of a sophisticated conspiracy to defraud. This deposition of Trosclair was not included in the record for our review.

On August 18, 2017, HGA filed a suit against the defendants in Lincoln Parish, Louisiana, alleging that the defendants conspired to make negligent, or alternatively, intentional misrepresentations that induced HGA to perform hundreds of thousands of dollars' worth of engineering and project management services for which HGA was never paid. The defendants filed exceptions of vagueness, prescription, and lack of personal jurisdiction.

At the district court's direction, HGA filed an amended petition on April 10, 2018. The defendants re-urged their exceptions of lack of personal jurisdiction, prescription, and vagueness. On December 3, 2018, the district court heard oral arguments on these exceptions. On March 22, 2019, the district court issued its judgment on the exceptions. In its well-written reasons for ruling, the district court held that the plaintiff had made a *prima facie* showing that the defendants had purposefully availed themselves of this state through their alleged fraudulent acts. The district court made note that it did not hold a contradictory hearing, but the matter was submitted on the pleadings with oral arguments, briefs, and attachments, including

4

affidavits. Therefore, the plaintiff's burden of proof was light. However, the district court found that the plaintiff's claim had prescribed. The district court made note of the similarities between the plaintiff's Pennsylvania suit and the complaint filed in its court as evidence that the plaintiff had constructive knowledge of the alleged tort no later than March of 2015. Thus, HGA's suit was dismissed. From this ruling, HGA now appeals. The defendants answered the appeal and appealed the ruling on personal jurisdiction.

## DISCUSSION

HGA argues that the district court erred in granting the exception of prescription and that the district court was correct in denying the exception for lack of personal jurisdiction.

*Prescription*

HGA argues that the district court's granting of the exception of prescription based on HGA's lawsuit filed in Pennsylvania in 2015 was an error. HGA claims that the doctrine of *contra non valentem* applies and that this matter has not prescribed. HGA states that the breach of contract action is distinct from the current tort action because in Pennsylvania, HGA only asserted claims against GHH and related entities, not the individual defendants. HGA urges that during a deposition on August 29, 2016, it learned that it was not a victim of GHH's corporate shell game, "but the subject of a conspiracy theory perpetrated by the individual Defendants named in this lawsuit." HGA claims it had no knowledge of this deception until a deposition on August 29, 2016. As such the claim has not prescribed.

The defendants argue that HGA's pleadings from Pennsylvania indicate that HGA was aware that GHH was running out of money at least

5

by the time of its suit in Pennsylvania. In their brief, the defendants cite the following language directly from the plaintiff's original complaint:

- Plaintiff believes and therefore avers that all important financial and business decisions for all Defendants had to be sent and approved by Gary Evans, CEO of all the Defendant entities, and Kirk Trosclair, COO of GHR.

- Plaintiff believes and therefore avers that GHW's bank account was the only bank account being used to pay for work performed for multiple or all the Defendants and that all checks drawn against this GHW bank account had to first be approved by Gary Evans… and Kirk Trosclair…

- Plaintiff believes and therefore avers that at all times relevant hereto, GHH did not have the financial wherewithal to pay for the work it requested HGA to perform and that Defendants' representatives involved with the Projects were aware of this fact.

- Plaintiff believes and therefore avers that there was no existing plan for GHH to obtain the money necessary to pay for this work.

- Because GHH was not even in existence until after the Projects began, Defendants intentionally deceived HGA regarding which entity it was actually contracting with for work.

- Defendants also intentionally deceived HGA because by contracting with HGA, Defendants' representatives implied and held out GHH as an entity that would be able to pay for the work when they knew this was not the case.

- Additionally, GHH intentionally deceived HGA regarding what property interests it had in the property where the work for these projects was to be performed. Plaintiff believes and therefore avers that GHH does not have any leasehold or ownership interest in the [Warwood or Benwood] Site.

- These intentional deceptions by Defendants show that Defendants were ultimately attempting to prevent HGA from being able to collect the money owed to it for the work performed from any other entity besides GHH.

Based on HGA's initial complaint, the defendants believe that HGA possessed "information sufficient to incite curiosity, excite attention or put a

6

reasonable person on guard to call for inquiry," no later than March 15, 2015.

Delictual actions are subject to a liberative prescription period of one year. La. C.C. art. 3492. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502; *Watson v. Glenwood Reg'l Med. Ctr.*, 49,661 (La. App. 2 Cir. 4/15/15), 163 So. 3d 817, *writ denied*, 2015-0945 (La. 8/28/15), 176 So. 3d 404. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of the same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. *Campo*, *supra*; *Ledet v. Miller,* 459 So. 2d 202 (La. App. 3 Cir. 1984), *writ denied,* 463 So. 2d 603 (La. 1985); *Opelousas General Hospital v. Guillory,* 429 So. 2d 550 (La. App. 3 Cir. 1983); *Bayonne v. Hartford Insurance Co.,* 353 So. 2d 1051 (La. App. 2 Cir. 1977).

Although La. C.C. art. 3467 provides that "prescription runs against all persons unless exception is established by legislation," the Louisiana Supreme Court has applied the jurisprudential doctrine of *contra non valentem* as an exception to this statutory rule. The Supreme Court has recognized four factual situations in which *contra non valentem* prevents the running of liberative prescription:

(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, citing, *Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So. 2d 1034 (La. 1987).

Under the fourth category, *contra non valentem* is applied when a cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. *Wimberly v. Gatch,* 1993-2361 (La. 4/11/94), 635 So. 2d 206; *Alexander v. Fulco*, 39,293 (La. App. 2 Cir. 2/25/05), 895 So. 2d 668, 672, *writ denied*, 2005-0781 (La. 5/6/05), 901 So. 2d 1107. This fourth category is commonly known as the discovery rule, and it provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. *Alexander, supra*. The *contra non valentem* "discovery rule" is only to be applied in extreme cases and prescriptive statutes are to be interpreted broadly in favor of maintaining a party's claim. *Marin, supra*. The Supreme Court has also stated that "this principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a

8

plaintiff will be deemed to know what he could by reasonable diligence have learned." *Marin, supra*, citing, *Renfroe v. State ex rel. Dept. of Transp. & Dev.*, 2001-1646 (La. 2/26/02), 809 So. 2d 947. When a party has enough information to incite curiosity, or put a reasonably minded person on guard and call for inquiry, he has the constructive knowledge necessary to start the running of prescription. *Campo, supra*; *Abbot v. Louisiana State Univ. Med. Ctr.-Shreveport*, 35,693 (La. App. 2 Cir. 2/27/02), 811 So. 2d 1107, *writ denied*, 2002-0952 (La. 5/31/02), 817 So. 2d 104.

On the trial of a peremptory exception pled at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pled, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. The party raising the exception of prescription ordinarily bears the burden of proof at the trial of the peremptory exception. *Alexander, supra*; *Spott v. Otis Elevator Co.*, 601 So. 2d 1355 (La. 1992). However, when the plaintiff's petition reveals on its face that prescription has run, the plaintiff bears the burden of showing why the claim has not prescribed. *Alexander, supra*; *Lima v. Schmidt*, 595 So. 2d 624 (La. 1992). If evidence is introduced in support or contravention of the exception, the ruling on the exception of prescription is reviewed by an appellate court under the manifest error standard of review. *Carter vs. Haygood*, 2004-0646 (La. 01/19/05), 892 So. 2d 1261, citing, *Stobart v. State, through DOTD*, 617 So. 2d 880 (La. 1993); *Collins Asset Grp., LLC v. Hamilton*, 53,209 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1201.

9

The district court correctly found that HGA's claim had prescribed on its face, and as such, HGA bore the burden of proving that its claim had not prescribed. To do so, HGA relies on the doctrine of *contra non valentem*. We find this argument unpersuasive.

There are several similarities between the Pennsylvania complaint and the Louisiana petition. In its Pennsylvania complaint, HGA stated claims for breach of contract and piercing the corporate veil. HGA also alleged that GHH did not maintain separate status from its defendants and that it was undercapitalized. HGA claimed that "GHH did not have the financial wherewithal to pay for the work requested HGA to perform and that Defendants' representatives involved with the Projects were aware of this fact."

Based on the original allegations in the Pennsylvania complaint, as of March 2015, HGA was aware that: 1) GHH was undercapitalized; 2) GHH did not have the financial capacity to pay HGA; 3) the defendants listed in the present complaint were aware that GHH did not have the money to pay HGA; and, 4) the defendants had made misrepresentations with respect to the funding of the project. As the district court correctly stated in its written reasons, "the Petitioners knew the project was unfunded, that misrepresentations had been made with respect to the funding, and that GHH did not have the ability to pay for the work by at the latest, March of 2015."

Louisiana courts have held that a claim is prescribed when a person possesses information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call or inquiry more

10

than one year before filing a tort suit. *Campo, supra*; *Abbot, supra*.
Based on the record, and specifically the Pennsylvania suit, the district court was correct in finding that HGA had sufficient facts to inquire further no later than March of 2015. Therefore, we affirm the district court's decision as it relates to prescription.

*Personal Jurisdiction*

The defendants argue that while this Court may simply presume jurisdiction and affirm based on the district court's prescription analysis, they also state that this Court can affirm the dismissal based on a lack of personal jurisdiction. The defendants claim that the district court did not have specific personal jurisdiction over the defendants. The defendants believe that they did not have the necessary minimum contacts with Louisiana. They argue that the bulk of the parties' relationship occurred out-of-state so there is no jurisdiction for suit in Louisiana.

More specifically, the defendants argue that Evans did not have any communications with anyone in Louisiana at any time before the unpaid work was performed. Evans contends that courts have consistently rejected using conspiracy as a basis to establish jurisdiction over one nonresident through the alleged contacts of other defendants in furtherance of the alleged conspiracy. Further, the defendants argue that McClung's and Trosclair's only contacts within the state came through limited telephone and email communications with HGA executives in Louisiana. As such, the state does not have jurisdiction over them.

HGA contends that the district court correctly found that it had jurisdiction over the defendants because their alleged tortious acts caused

11

monetary damages in Louisiana arising out of their minimum contacts with Louisiana.

The Louisiana long arm statute, La. R.S. §13:3201, provides in relevant part:

A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

Personal jurisdiction may be asserted over a nonresident defendant only if that defendant has certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A state has specific jurisdiction over a defendant when the suit arises out of or is related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

The minimum contacts prong is satisfied by a single act or actions by which the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc.*, 48,827 (La. App. 2 Cir. 4/9/14), 138 So. 3d 776, *writ denied*, 2014-0965 (La. 8/25/14), 147 So. 3d 1119 citing, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). By its actions, the nonresident defendant should reasonably anticipate being haled into court in the forum state. This requirement ensures that a nonresident defendant "will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person." *Lewis, supra*, citing, *SteriFx, Inc. v. Roden*, 41,383 (La. App. 2 Cir. 8/25/06), 939 So. 2d 533.

The fairness prong arises once the plaintiff meets the burden of proving minimum contacts, at which point jurisdiction is presumed reasonable and the burden shifts to the defendant to prove that the "assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." *Lewis, supra*, citing, *SteriFx, supra*.

For specific jurisdiction, the defendant must have purposefully directed activities at the forum and/or its residents, and the litigation must result from alleged injuries that arise from or relate to those activities. *Burger King Corp., supra.* When the cause of action does not arise out of the defendant's purposeful contacts with the forum state, the defendant's contacts with the forum must be "continuous and systematic" to support the

exercise of general jurisdiction. *Helicopteros, supra*; *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485 (1952); *De Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So. 2d 103 (La. 1991); *Greenway Leasing L.P. v. Star Buffet Management, Inc.*, 45,753 (La. App. 2 Cir. 1/26/11), 57 So. 3d 397.

When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999). Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. *Guidry, supra*.

An appellate court conducts a *de novo* review of a trial court's legal ruling on an exception of lack of personal jurisdiction, but any factual findings underlying the decision are reviewed under the manifest error standard. *Lewis, supra*, citing, *Maguire Plastic Surgery Cent., LLC v. Booker*, 47,929 (La. App. 2 Cir. 5/22/13), 117 So. 3d 239; *SteriFx, supra*. When an exception is decided on the pleadings, memoranda, and depositions, the plaintiff, as the nonmoving party, bears a relatively slight burden and all reasonable inferences from the record and the allegation of the complaint are to be drawn in the nonmoving party's favor. *Lewis, supra*.

14

In its written reasons, the district court cited to *Lifecare Hospitals, Inc, supra*. There, this Court held that although the defendant's contact with the state were a limited number of telephone calls, a hospital's mere economic loss within the state was sufficient to support exercise of personal jurisdiction.

Furthermore, in *Guidry, supra*, a Louisiana tobacco consumer brought a suit against several tobacco trade associations alleging that associations created a false impression in Louisiana that addictive effects of tobacco products were much less than the associations knew them to be, and that consumers suffered injuries in Louisiana as a result of relying on the false representation. The U.S. Fifth Circuit held that the plaintiffs made a *prima facie* showing that each of the tobacco associations had engaged in acts and omissions that included intentionally negligent misrepresentations that caused the plaintiff to suffer injury, and that this constituted sufficient minimum contacts with Louisiana to confer personal jurisdiction. *Guidry, supra.*

In their brief, defendants cite federal cases like *Delta Brands Inc. v. Danieli Corp.*, 99 Fed. App'x. 1 (5th Cir. 2004). There, a domestic manufacturer of steel-processing equipment sued an Italian competitor, its domestic representative, and Swedish steel-sheet manufacturer, alleging fraud. The U.S. Fifth Circuit held that the plaintiff failed to show that the Swedish manufacturer individually, and not as part of the conspiracy, had minimum contacts with Texas. *Delta Brands Inc., supra.*

Here, HGA, a Louisiana-based company, suffered economic loss within the state as it was allegedly defrauded out of over $745,000 worth of work. According to affidavits supplied by the plaintiff, the defendants had

15

contacts with HGA executives in Louisiana in which misrepresentations were made in furtherance of the alleged conspiracy. Therefore, the defendants purposefully availed themselves of this state's jurisdiction by allegedly committing these intentional acts.

Given the slight burden placed on the plaintiff in such cases, we defer to the district court's finding that the plaintiff has met its burden of making a *prima facie* showing of minimum contacts necessary for the exercise of personal jurisdiction over the defendants. Although it would have been proper for the district court to analyze each individual defendant's contact with the state, as the U.S. Fifth Circuit did in *Delta Brands Inc., supra*, any error created by that is harmless, given that the claim has prescribed. As such, we affirm the district court's decision.

## CONCLUSION

For the foregoing reasons, we affirm the district court's granting of the exception of prescription and the denial of the exception of lack of personal jurisdiction. Costs of this appeal are divided evenly between the appellant and appellees.

**AFFIRMED.**